IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

United States of America,

v.                                                          Case No. 4:05-cr-057-MLB

Josh Smith (8),

        Defendant.

_____/

**OPINION & ORDER**

Defendant Josh Smith, currently serving a thirty-year prison sentence, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Dkt. 1624.) The United States opposes his motion. (Dkt. 1629.) The Court denies Defendant Smith's request for many reasons.

**I.    The Background Facts**

In 2006, The United States indicted Defendant Smith and others, charging him with participating in a racketeering conspiracy whose members committed a multitude of related criminal acts, including murder, attempted murder, kidnapping, arson, and trafficking in illegal narcotics. (Dkt. 1.) Three weeks into trial, Defendant Smith pled guilty

to one count of racketeering conspiracy and two counts of carrying a firearm (or aiding and abetting a co-defendant's possession of a firearm) during two murders. (Dkts. 1067, 168; PSR ¶¶ 3,4.) The facts established that Smith was an upper-level member of the RICO enterprise that distributed methamphetamine, cocaine, and marijuana in northwest Georgia from at least 2000 until 2006. (PSR at ¶ 26.) Smith was one of the largest redistributors in the conspiracy from 2002 until his arrest in 2004 and admitted selling more than $500,000 worth of methamphetamine annually. (*Id.*) The enterprise was extremely violent. Defendant Smith was, too. In his plea agreement, he took responsibility for participating in the murder of two men who owed the organization money. (*Id.* at ¶ 5(e).) During the trial of co-defendant Shane Rosser (and in a statement detailed in the Presentence Report), Defendant Smith explained that he, Rosser, and a woman identified as E.S. drove to a trailer where T.J.A. and C.F. lived to collect a drug debt. (*Id.* at ¶ 17.) Defendant Smith and Rosser carried shotguns. (*Id.*) When T.J.A. and C.F. could not pay, Rosser shot and killed T.J.A. (*Id.*) Defendant Smith was supposed to kill C.F. but got scared. (*Id.*) Rosser then executed the man. (*Id.*)

Defendant Rosser (and the others) were convicted at trial. The Court sentenced Rosser and the others to life imprisonment (with each receiving additional decades imprisonment beyond that sentence). (Dkts. 1302, 1425, 1329, 1426, 1299, 1427.) Because Defendant Smith cooperated with law enforcement, the Court sentenced him to 30 years imprisonment on each count of conviction, with each term running concurrently. (Dkt. 1178.)

Defendant Smith now seeks compassionate release claiming he should be let out of prison because of health concerns and what he believes to have been an "unfair sentence." (Dkts. 1624 at 4, 1624-1.)

## II. The Law

Previously, compassionate release was only available to an inmate if the Bureau of Prisons ("BOP") filed a motion requesting it. *See* 18 U.S.C. § 3582 (as effective Nov. 2, 2002 to Dec. 20, 2018). The First Step Act of 2018 changed that by allowing a defendant to file a motion for compassionate release directly with the sentencing court, provided he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his or her] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his or her]

facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). A court may then modify a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable," the court finds "extraordinary and compelling reasons warrant the reduction" and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Section 1B1.13 of the Sentencing Guidelines and its Application Note 1 provide the policy statement for what constitutes "extraordinary and compelling reasons," including certain medical conditions. U.S.S.G. § 1B1.13(2)–(3) (Application Note 1.). The policy statement also says the Court must determine "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* The Sentencing Commission has not updated U.S.S.G. § 1B1.13 since passage of the First Step Act, including possibly to identify additional categories of extraordinary and compelling circumstances. But that section and Application Note 1 still apply and limited what a court may consider as extraordinary and compelling circumstances. *United States v. Bryant*, 996 F.3d 1243, 1265 (11th Cir. 2021).

### III. The Legal Analysis

It appears Defendant Smith complied with the first step in the process—filing his motion with this Court after first requesting relief from the warden file and then waiting 30 days after making the request with no response from the warden.  (Dkt. 1624 at 3.)  The Court thus has the authority to consider his compassionate release motion.

His request, however, fails at the second step because Defendant Smith has not shown extraordinary and compelling circumstances justifying compassionate release.  Defendant Smith contends he suffers from several medical issues that justify his release.  The Sentencing Guidelines explain that extraordinary and compelling medical reasons for compassionate release include medical conditions like a terminal illness; some other serious physical, medical, or cognitive impairment that prevents the defendant from providing self-care within the correctional facility; the attainment of age 65 with serious deterioration as a result of the aging process; or family circumstance like the loss of a caregiver to minor children or the incapacitation of a spouse with no other caregiver.  *See* U.S.S.G. § 1B1.13(2)–(3) (Application Note 1).

As confirmed by a review of Defendant Smith's medical records attached to the United States' response, none of Defendant Smith's

medical afflictions rise to this level. Records show he has a Vitamin D deficiency (which the United States says can be treated with dietary supplements or sunlight); a dental problem with the pulp in his teeth (which the United States says can be treated with a root canal or other dental procedure); cervical spondylosis (which the United States says has not impacted his physical condition and for which Defendant Smith is seeking medical treatment through the BOP); a pinched nerve, (which the United States says relates to the cervical spondylosis); obesity (which the United States concedes is a correct diagnosis); arthritis in his shoulder (which the United States says is being treated); and hypertension (which the United States says can be treated with medicine and dietary adjustments). (Dkt. 1629 at 7-10.) Defendant Smith has presented no evidence challenging the United States' assessment of these conditions or otherwise suggesting they rise to the level of extraordinary and compelling.

As a secondary argument, Defendant Smith says he should be released from what he calls an "unfair sentence"—an argument

foreclosed by *Bryant*. *See United States v. Brown*, 2022 WL 244080, at *2 (11th Cir. Jan 27, 2022).[1]

Even if Defendant Smith's medical conditions were somehow extraordinary or compelling, the Court would deny relief on the grounds it cannot conclude Defendant Smith is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). Defendant Smith was a member of a violent drug trafficking organization. He participated in that willingly, including by driving to the home of T.J.A. and C.F. to kill them or take money from them. He carried a shotgun for that specific purpose. That he ultimately chickened out or decided not to pull the trigger after seeing his partner kill T.J.A. is not impressive. He was still part of that murder and admitted his involvement.

And even going one step further, if the Court could get around all the other issues and see past the danger he poses to others, the Court still would not, after considering the factors set forth in 18 U.S.C. § 3553(a), exercise its discretion to provide compassionate release. Again,

---

[1] Defendant does not cite the Covid-19 pandemic either itself or along with any medical condition as a basis for his release. But, even if he had, the Court would reject that argument on the record before it.

Defendant Smith was part of a dangerous organization for a long time. He sold a significant amount of drugs and, as stated above, participated in the killing of two men. His co-defendants (who are differentiated mainly by the fact that they went to trial rather than cooperating as Defendant Smith did) all received life sentences plus additional decades in prison. Having reviewed the PSR and other materials included with Defendant Smith's motion for compassionate release, the Court finds that, to release Defendant Smith now, would not promote respect for the law, reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, or protect the public. It also would not accurately reflect the nature and circumstances of his offenses. Considering all the applicable factors, this Court remains convinced the sentence imposed is sufficient but not greater than necessary to comply with the purposes of the sentencing statute.

### IV. The Conclusion

For these reasons, the Court **DENIES** Defendant Smith's motion for compassionate release. (Dkt. 1624.)

**SO ORDERED** this 14th day of February, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE